1. WILL—CONSTRUCTION—DEBT DUE BY LEGATEE. .
   Testator gave, by the third clause of his will, his residuary estate to his children and grandchildren. The fifth clause directed that all money, with interest, due at his decease from the residuary legatees, should be included as a part of the personalty, whether the debts were outlawed or not, and every debt which a legatee might owe at testator's decease, with interest, should be reckoned as so much had and received on account of any provision in the will. *Held*, that a grandson who lived for more than 10 years after the death of the testator, and who owed him money secured by notes, was liable for simple interest thereon from the testator's death, which the executors, in settling with the grandson, might set off against his share.

2. EXECUTORS—LOAN—INTEREST.
   Where an executor borrows moneys from the estate, and repays them, he is chargeable with 5, and not more than 6, per cent. interest.

In the matter of the accounting of Nathan A. Downs and William H. Wells, executors of Daniel Griffing, deceased. Interests determined.

George F. Stackpole, for executors.
Augustus M. Price, for contestant.

PETTY, S.  The provisions of the will relevant to this inquiry are as follows:

"Third. I give, devise and bequeath all the rest and residue of my property both real and personal to my children and certain grandchildren herein named as follows, viz.: To my daughters Huldah Williamson, Caroline M. Wells, Georgiana Downs and Martha J. Parsons and my Grandson Willis Reeve, each, one equal undivided two thirteenth parts thereof, and to my Grandsons Addison H. Griffing and Gilbert B. Griffing and my Granddaughter Lilian A. Jackson, each, one equal undivided thirteenth part thereof to them and each of them and to their heirs forever, except as hereinafter provided.

"Fourth. In case any of my children or Grandchildren mentioned in the Third clause herein, die before the expiration of ten years after my death without issue living, I direct that the share of such child or Grandchild, be distributed among the remaining children and Grandchildren as devised and bequeathed in the third clause herein.

"Fifth. I order and direct that all money with interest due me at my decease from my children and Grandchildren also due me from the Husband of my daughter Martha J. Parsons, be added in and included as a part of my personal property whether any of the debts are outlawed or not and that each and every debt of my children and Grandchildren, which they or any of them may owe me at my decease with interest shall be treated and reckoned in as so much had an received on account of the provision I have made herein for them and each of them and I also direct that the debt due me from the Husband of my daughter Martha J. Parsons shall be inventoried as part of my personal property and treated & considered as so much had & received by my daughter Martha J. Parsons on account of my provision for her herein."

At the decease of the testator the principal of, and certain interest on, two notes given him by the contestant for money loaned, were due and unpaid. At the expiration of the 10-year limitation the executors made distribution to the legatees, charging against the share of the contestant, a grandson, the principal of these notes, and interest to the date of the distribution. It is the contention of the contestant that no interest should be charged to him on these notes subsequent to the testator's death, but that the principal of the notes, with the interest accrued to that time alone, should be deducted from his share, as received by him then, on account of his interest in the estate. Whether this be the correct view, or not, depends solely upon the intention of the testator; and in determining this I am limited to the language of the will, which in this respect is unfortunately obscure. It is first to be observed that the words "at my decease," occurring twice in clause fifth, are without significance. They express what is true as a matter of law, namely, that debts due a decedent mean due at his death; but, so far as aiding in the interpretation of the instrument, they neither add nor take away. It is to be further observed that, whatever rule of construction be adopted, it must be one which will meet and harmonize with all parts of the will, and with all the possibilities which may have arisen thereunder. At the death of testator there was no certainty that the contestant would ever be entitled to a share in the estate. He was not an ordinary legatee, but was required by the deceased to survive him for 10 years, or, dying within that period, to leave issue surviving, in order to qualify himself as a beneficiary. He had, undoubtedly, at the death of the testator an interest, but it was not one which entitled him to the payment of money of the estate until the terms imposed had been met and satisfied. Being entitled to no share at testator's death, no payment on account thereof could be made at that time. If the executors could not at that time advance to him in cash on account of his interest, they could not accomplish the same end by canceling an indebtedness then existing from him to the testator. The words "had and received," as used in the fifth clause, do not warrant a different conclusion, for by express direction he shall not "have and receive" until the 10 years expire, and perhaps not even then. It appears, furthermore, from a study of the entire will, that the idea uppermost in the testator's mind was equality. Why he made of his legatees two classes is immaterial. It remains that the members of each class must share and share alike. This cannot be accomplished unless the interest on the debts of the legatees continues until those debts are actually paid. The estate began at less than $5,000 personalty. It has increased to nearly $20,000, mainly from accumulations of income. In this increase, as in the principal, the contestant shares to the extent of his one-thirteenth. So do others of his class, but unless his obligations bear interest he receives a decided advance over them, namely, the entire income for 10 years on his indebtedness, instead of one-thirteenth only. It was the express wish of the testator that no such disparity should exist, and the equitable right of retainer applies as to both principal and interest. A similar view

was that expressed in Matter of Foster's Estate, 38 Misc. Rep. 347, 77 N. Y. Supp. 922. The estate is, in fact, for all intents and purposes, the same as if the testator had himself lived during the 10-year limitation, and at the end thereof divided his estate into thirteenths, to take effect at once; and, despite the lapse of time either before or after the testator's death, the equitable rule requires that the executors shall deduct from the share paid the legatee his indebtedness, both principal and interest. Rogers v. Murdock, 45 Hun, 30. That this rule would have been adopted in Matter of Robert, 111 N. Y. 372, 18 N. E. 843, had not the testator expressly negatived the question of interest, is strongly intimated in that case. At page 380, 111 N. Y., and page 844, 18 N. E., the court says, speaking of a debt due from a beneficiary on which the testator directed no interest to be charged:

"In this clause we find an added incident of the indebtedness before referred to. It is such as is interest-bearing, either by its own terms, or by operation of law consequent upon its being due and payable, and the object of the provision is to interfere with and modify the legal rules which would attach interest to the debt due or to become due."

That the relations of testator and contestant were those of the ordinary creditor and debtor is established by the decision in Ritch v. Hawxhurst, 114 N. Y. 512, 21 N. E. 1009. In this case the provisions of the will, save for the 10-year limitation, were the same, in substance, as those of the will under discussion. It was clearly held that no gift or advancement was intended; that the transaction remained as it was at the beginning—a simple debt; and the judgment entered therein, to be consistent with the opinion, must have included interest. In Verplanck v. De Went, 10 Hun, 611, the will directed the sum of $5,000 paid the legatee by testator during life, "to go in diminution" of his share in the estate. Interest on this amount was charged to the date of settlement, the court saying:

"It stands upon the same footing as any other debt due the estate; the time the debt is due being fixed as the day the will takes effect; its collection being deferred to the date of distribution of the legatee's share. It forms a portion of the assets of the estate, and the legatee receiving his share of it upon the distribution of his share."

In Adair v. Brimmer, 74 N. Y. 539, as in the case in issue, a legatee was indebted to the testator at the death of the latter. At page 560 the court says:

"This indebtedness is to be taken into account, however, as reducing or satisfying the amount which he was entitled to draw as his distributive share of the principal and income of the estate, and which amounted on the 31st of December, 1871—the date to which the accounts were made up—to about $85,000, on the basis of the account as settled. Interest being chargeable to him on his indebtedness from the date of the death of the testator."

Again, at page 566:

"For the indebtedness of Charles, existing at the time of the departure of Mr. Brimmer for Europe in August, 1867, or so much of it as is in excess

of the amount payable to Charles at the time of the accounting, less the portion of indebtedness which existed·at the death of the testator, Mr. Brimmer should be held responsible with the other executors; and the amount due by Charles at the testator's death, with the interest thereon, should be first applied to the extinguishment of his distributive share of the estate."

Upon principle and authority, therefore, interest on the indebt-·edness of all legatees is properly chargeable to the date of settle-:ment. Simple interest alone, however, should be charged. The executors have, in good faith, and in an honest interpretation .of the will, added to the principal of the contestant's notes the interest due ·thereon at testator's death, and, on the sum so found, have computed interest to the settlement. With this I do not agree. The contestant, while having a debtor's liabilities, is also entitled to a debtor's privileges. The computation, as made, amounts to compound interest. This would be as unjust to the contestant, as it would. have been to others, strangers, whose notes the testator held at his death, and who paid simple interest thereon for some time thereafter. Nothing in the will requires interest on interest. Being an ordinary debt, the everyday rules of interest apply. The proper method is to compute interest on the notes from their dates to the date of settlement at the expiration of the 10 years, deducting from the sum so found all payments of interest made.

The objection that the managing executor should be charged with 6 per cent. interest on the loans made to himself is not sustained. There is no hard and fast rule fixing the liability of executors for interest. The rate is to be determined from an examination of all the circumstances in each case, the most important of which is good or bad faith, as the case may be. The executor has, in good faith, loaned to himself various sums, and given therefor in each case a note payable to the estate, with interest at 5 per cent. Principal and ·interest have been fully paid. The notes have been kept with and .as part of the assets of the estate, and marked "Paid" at the proper ·time. The entire estate has been ably managed. Exclusive of the proceeds from realty, the estate has about doubled in 10 years. At no time has there been a loss. A large part of the income is that paid ·by the executor on the notes. Upon principle, he is rather to be ·commended than censured. The difficulty in obtaining investments should not be lost sight of. A safe investment at 6 per cent. is as ·rare as it is desirable. Safety and good income are strangers. The executor has paid the going rate, and the legatees have benefited by 1 per cent. over and above the income from the savings bank ac-·counts, to which there is no objection. Had the executor loaned to his neighbor on similar notes, with the same successful outcome, no ·objection could have been made. That such a loan, in event of loss, would render him personally liable for principal and interest at the legal rate, is immaterial, when in fact no loss occurred. Certain trust investments are not illegal in the ordinary use of that term, but illegal in the sense that the investor takes the risk, and must make the principal good, with legal interest in event of loss. Where he takes the risk, however, and that successfully, he should not be charged a

penalty of 1 per cent. for benefiting the estate by five. The cases cited in supporting this objection are distinguishable. In King v. Talbot, 40 N. Y. 76, while 6 per cent. was charged, it was one less than the highest legal rate, and the court observes at page 95:

> "Where the failure of a trustee in his duty is willful, or characterized by bad faith, the highest rate of interest should be imposed. But where good faith and honest mistake concur, the rate of interest rests in a discretion that permits the consideration of all the circumstances, which show that substantial justice can be done to the cestui que trust by allowing a less rate."

In Matter of Myers, 131 N. Y. 416, 30 N. E. 135, the assets of the deceased were actually appropriated to the use of the executors individually. Here was an actual devastavit. A speculative business was carried on by them with the testator's capital. Not the slightest attempt was made to invest the estate for the beneficiaries. As in the Matter of Thorp's Estate, 31 Misc. Rep. 581, 65 N. Y. Supp. 575, the assets of the decedent had lost their identity as estate funds, and became individual capital. In Matter of Hall, 164 N. Y. 196, 58 N. E. 11, the funds were invested in a manufacturing corporation which failed, and most of the investment was lost. The executor was charged with principal and legal interest. Such could not have been the decision had the corporation prospered, and he accounted at the proper time for the principal, with 5 per cent. dividends in cash. In Matter of Wotton, 59 App. Div. 584, 69 N. Y. Supp. 753, a similar loss occurred. In Baker v. Disbrow, 18 Hun, 29, there was an entire loss of principal, and a partial loss of income. In Adair v. Brimmer, 74 N. Y. 539, no income was derived, and there was a loss of principal. The following cases will be found to support the rule declared: Price v. Holman, 135 N. Y. 124, 32 N. E. 124; Wilmerding v. McKesson, 103 N. Y. 329, 8 N. E. 665; Collyer v. Collyer, 6 N. Y. St. Rep. 693; Matter of McKay, 5 Misc. Rep. 123, 25 N. Y. Supp. 725; Shepard v. Patterson, 3 Dem. Sur. 183; United States Trust Co. v. Bixby, 2 Dem. Sur. 494; Du Bois v. Brown, 1 Dem. Sur. 317.

Valuable assistance having been rendered the court by counsel, costs will be awarded to both sides.

Decreed accordingly.